## Graves *et al. v.* Mississippi and Alabama Railroad Company.

Where a note is made payable to a bank, the holder may sue in the name of the bank for his own use, and proof is admissible on a tender in the bills of the bank, to show that the note never was the property of the bank.

IN ERROR from the circuit court of the county Hinds.

This suit was brought in the name of the Mississippi and Alabama Railroad Company, for the use of Joshua A. Martin, against the plaintiffs in error, on a note made payable to the Mississippi and Alabama Railroad Company. The declaration contained only a special count. The defendants below pleaded non assumpsit, and filed an account of offsets in the notes of the company. To avoid this, the plaintiff introduced one Demoss as a witness, who proved that the note was given, not to the bank, but to Johnson, for a house and lot in the town of Jackson. The plaintiff also introduced one Gibbs as a witness, who testified that he had examined the books of the bank, and that the note never had been discounted there. He was one of the clerks of the bank. This testimony was objected to, and the question was whether it was admissible.

Shelton for plaintiffs in error.

1. The cause of action stated in the declaration is, that defendants, for a valuable consideration, made and delivered to the Mississippi and Alabama Railroad Company the note sued on, but did not pay it when due. The proof offered by plaintiff is, that the defendants did not make and deliver to said company the note sued on, but made and delivered it to another person. The allegations of the declaration are, that the defendants received a valuable consideration from the bank; that they promised to pay the

bank, and that they did not pay the bank.    The proof offered is, that the valuable consideration was received of Johnson, and not of the bank; that the promise was to Johnson, not to the bank; that they did not pay Johnson.

Now, a plaintiff's declaration is his statement of his cause of action, and a denial of those facts (as in the present instance) not only puts him upon proof of *some cause of action,* but puts in issue the truth of the *identical facts* stated in the declaration.   In other words, the plaintiff is bound by the allegations of his declaration, and is estopped from the denial of them.   2 Starkie, 16, 17; Bull. N. P. 298.

Again: here is a positive statement of certain facts on the one hand, and a positive denial of them on the other—what is the only reply to such a denial?   Of course, *proof of the facts denied.* Evans's Plead. 20.   But suppose the plaintiff, instead of proving the facts alleged by him and denied by his adversaries, had, by a replication, insisted on the identical facts which he here seeks to prove, could such a replication have been sustained?   It would be a statement of a new ground of action; an abandonment of his former one; a giving up the cause by him originally brought, and a statement of a new cause: technically speaking, it would be a *departure,* and therefore inadmissible as a replication.   Evans's Plead. 59, 70.

This same principle is recognized as well in evidence as in pleading; and that which would be fatal as a departure in pleading, will be equally fatal as an objection to evidence.   Thus, an executor or administrator declares on a promise to *testator* or *intestate;* defendant pleads statute of limitations; plaintiff offers evidence of a promise made to *himself* as executor or administrator, in time to take it out of the statute: held, that it should not have been given in evidence in support of the declaration; it is in evidence a departure from the pleading.   1 Saund. on Pl. and Ev. 489, 492; Salk. 28, 282; 6 Mod. 309.

The second question is on the admissibility of Gibbs's evidence. True, the minutes of the proceedings of a public corporation are evidence to prove its corporate acts, as in the case in 5 Wheaton, 420; but in the first place, the books were not introduced in the case at bar, and testimony will not be admitted to prove the con-

tents thereof, without first showing the loss of the books. 3 John. R. 226. In the second place: if the books had been introduced, they were not proved to be the minutes of the corporation—and this would have been necessary. 1 How. Rep. 478; 10 John. R. 154.

In the third place: if introduced and authenticated, they were not *minutes of the proceedings* of the corporation, nor of its board of directors, but a mere account or memorandum book for the convenience of its officers, and therefore, like all such entries by individuals, must be proved by the party cognizant of the facts, or if the clerk entering it be dead, by proof of his hand writing. 8 J. R. 212.

The third question is, should the defendants have been allowed their offsets?

The contract was made either with the bank or with Johnson. If with the bank, defendants were entitled to prove their offsets by statute. H. & H. p. 373, sec. 12. If with Johnson, then the plaintiff's cause of action, as stated in the declaration, is disproved, and therefore this action cannot be sustained, and therefore the plaintiff must go back and either bring a new action or put additional counts to his present declaration.

The principal position taken by defendant, one which he must sustain (without an exception thereto) to succeed is this: "A note may be made payable to a fictitious payee, and testimony is admissible to prove the fact and that the note is due to some individual other than that named." This principle is true under two circumstances: 1st. If the note be made payable to a fictitious payee "or bearer," the holder may sue and recover on the note *as bearer thereof,* which is the case in the authorities cited by appellees of Vere *v.* Lewis, 3 T. R. 182; 3 T. R. 481. In such case the party sues not as deriving title or interest from the payees, but claims immediately as the promissee of the maker; and this is true of notes payable to *bearer,* whether the payee be nominal or real. 1 Mason's Rep. 251.

2. If the common or money counts be in the declaration, in such case the recovery is not on the note, but upon the *value received* for it, and the note is read only as an acknowledgement *of the receipt of that value.* The case cited by appellees from 1 T.

R. 174, is entirely of this character. The case was this: suit by an indorsee against the acceptor of a bill, a special, and all the common and money counts in the declaration, the payees were fictitious, and that fictitious name indorsed on the note, proof of knowledge of all the facts by both parties at the time of the contract, *no proof of the handwriting of the fictitious. indorser,* (payee.)    Demurrer to evidence.    The court, in overruling the demurrer, expressly say, p. 182, "The counts on which the judgment of the court is given are those for *money paid* and not sued on by Martin in his own name; that in the declaration there is but one special count founded on the note itself, and, therefore, under the principle stated in 3 T. R. 182, the evidence should have been rejected.

Foote and Hutchinson, for defendants.

The holder of a note not negotiable, and not indorsed by the payee, may bring suit on such note in the name of the payee, for his own use. Baily on Bills, 338; 16 Mass. Rep. 451; 1 Harris and Johns. Rep. 328.

And such suit would not abate by the death of the nominal plaintiff. Rev. Code, 115.

And the defendants below, in making this note, undertook to pay the holder, whomsoever he might be, claiming it as his own.

A note may be made payable to a fictitious payee, and testimony is admissible to prove the fact, and that the note is due in fact to some particular individual, other than the nominal payee. And the court did not err in admitting the testimony of Demoss. Zolock *v.* Harris, 3 Term. Rep. 174; Vere *v.* Lewis, 3 T. R. 182; 3 T. R. 481; 1 Henry Blackstone 313; Hunter *v.* Blodgett, 2 Yeates R. 480.

Where a note is made payable to some person *in being,* but having no interest, and not intended to become a party, such payee may be deemed fictitious. Foster *v.* Shattuck, 2 N. Hamp. Rep. 446.

The plaintiff, J. E. Martin, being the holder, was *prima facie* the owner of the note sued on; in fact, his right to hold the note was not contested on the trial. And the fact having been established by the testimony of William C. Demoss, that the note was

made to John L. Johnston, and by him transferred to the plaintiff, every thing was proved necessary to the plaintiff's recovery.

The court properly refused permission to the defendant below to offer in evidence of payment the *Brandon* bank notes. Even had Martin failed to prove a transfer of the note from Johnson to himself, the protest of the notary, at the request of the cashier, Z. P. Wardell, was insufficient to prove that the bank was then the owner of said note.

It has long been customary for notes to be deposited with banks for collection. Mead *v.* Engs, 5 Cowan, 303.

The rights and equities existing between the *original* parties will follow a note into the hands of third persons, under our statutes. And the defendants, holding a counter claim against Johnson, before notice of transfer from him, might have used such claim as an offset; but certainly, not claims against a party never having an interest in the note, which is the foundation of the plaintiff's action.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The plaintiffs in error contend, that the evidence was not admissible, inasmuch as its tendency was to negative the allegations in the declaration. This case is scarcely distinguishable from the case of the Commercial Bank of Natchez, use of Briggs *el al. v.* Claiborne, 5 Howard, 301. The note in that case was made payable to the bank for the purpose of getting it discounted, but the bank refused to do so, and Briggs, Lacoste & Co. advanced money on it, and brought suit in the name of the bank, for their use. It was held that the action was well brought, and that proof could be let in to show the transaction. It does not certainly appear that the note in this case was intended for discount, though it is altogether probable that it was, and that it was therefore made payable to the bank. Notes and bills are sometimes made payable to fictitious payees, and when this is known to the acceptor or maker, they will be held responsible to a *bona fide* holder. The current of authorities seems to sustain the decision in the case of the Commercial Bank, use of Briggs, *v.* Claiborne, in holding that a note so made may be enforced by the holder, who may use the name of the bank, where they are so made payable, for the pur-

pose of sueing.   The holder of the note is the party beneficially interested, or real plaintiff, and this circumstance will justify the introduction of evidence to show his right, although it may in some degree contradict the formal allegations in the declaration. Considering Martin as the real plaintiff, the testimony of Demoss would have been admissible to prove his right to the note if it had been questioned, and it was equally admissible to rebut any other defence which ought not to prevail against him.   The testimony of Gibbs, although it may be objectionable, was immaterial, or at least unnecessary.   Demoss stated that the note was not given to the bank, to which it was made payable, but to Johnson, for a valuable consideration.   The *onus* was then changed.   If the defendants wished to make their offset available, it devolved on them to show that it subsequently came into possession of the bank. So that even if Gibbs' testimony was objectionable, it was but cumulative, and will not justify a reversal of the judgment.

Judgment affirmed.